# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

TRUSTEES OF THE UNITED
FOOD AND COMMERCIAL
WORKERS UNION AND
PARTICIPATING FOOD
INDUSTRY EMPLOYERS TRI-
STATE HEALTH AND WELFARE
FUND

No. 1:23-cv-2645-RMB-EAP

**OPINION**

*Plaintiffs*,

v.

CONSULATE HEALTH CARE,
LLC d/b/a FROSTBURG
VILLAGE; and, STERLING CARE
FROSTBURG VILLAGE

*Defendants*.

## **APPEARANCES**

Steven J. Bushinsky, Esq.
Kevin Douglas Jarvis, Esq.
O'Brien, Belland & Bushinsky
509 S. Lenola Road
Building 6
Moorestown, NJ 08057

   *Attorneys for Plaintiffs*

Heather Weine Brochin, Esq.
Jonathan Edward Kohut, Esq.
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054-2891

   *Attorneys for Defendant Sterling*

<u>Bumb</u>, Chief District Judge

**THIS MATTER** comes before the court upon Defendant Sterling Care Frostburg Village's Motion to Dismiss (ECF No. 29) the Amended Complaint of Plaintiffs Trustees of the United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Health and Welfare Fund (ECF No. 20). Defendant Sterling seeks dismissal on the bases that: (1) an asset purchase does not necessarily render Sterling liable for Co-defendant Consulate's alleged violations under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, <u>et</u> <u>seq</u>. and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and, (2) some of Plaintiffs' claims are barred by the statute of limitations. For the reasons set forth below, Defendant's Motion will be **GRANTED**.

I.   BACKGROUND

   A.   Procedural Background

By way of Complaint filed May 15, 2023 and amended August 29, 2023, Plaintiffs brought the above-captioned action against Defendants Consulate and Sterling, seeking damages pertaining to allegedly delinquent employee fringe benefit contributions. (ECF No. 20 ¶ 1.) In response to the Amended Complaint, Defendant Sterling submitted a Letter Request to file a Motion to Dismiss (ECF No. 25), in which it delineated the alleged deficiencies of Plaintiffs' Amended Complaint. Plaintiffs responded (ECF No. 27) and Defendant's Request was ultimately granted

(ECF No. 28).  The instant Motion to Dismiss (ECF No. 29) followed.  Plaintiffs have opposed the Motion (ECF No. 38), prompting a Reply by Sterling (ECF No. 40).  The matter is now ripe for disposition.

### B. Factual Background[1]

#### 1. Consulate's Agreement with Plaintiff

At all times relevant hereto, Defendant Consulate was party to, and agreed to abide by the terms and conditions of, a Collective Bargaining Agreement ("CBA" or "Labor Contract") with the United Food and Commercial Workers Union (UFCW Local 27) and Participating Food Industry Employers Tri-State Health & Welfare Fund (the "Fund").  (Am. Compl. ¶¶ 4, 16.)   In doing so, Defendant Consulate also contractually agreed to abide by the terms of the Agreements and Declarations of Trust ("Trust Agreements") which govern the Fund.  (Am. Compl. ¶ 17.) The Trust Agreements of the Fund set forth the rules and regulations with respect to participation in, and administration of, the Fund.  (Am. Compl. ¶ 17.)  By virtue of the CBA, Trust Agreements, and in accordance with relevant law, Defendant Consulate was obligated to: (1) timely remit fringe benefit contributions to the Fund on behalf of its eligible employees who are members of, or are represented by,

---

[1] When construing the allegations set forth in Plaintiffs' Amended Complaint, this Court must "accept as true all well-pleaded allegations[,]" including "all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  However, the court need not accept "unsupported conclusions and unwarranted inferences," Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997), or "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986).

UFCW Local 27 ("bargaining unit employees"); (2) submit monthly remittance reports to the Fund detailing all bargaining unit employees who worked in each period, the wages paid to those employees in that period, and the amounts of fringe benefit contributions to be remitted to the Fund on behalf of said employees based upon the gross labor payroll paid by Defendant Consulate on behalf of its bargaining unit employees; (3) produce upon request by the Fund all books and records deemed necessary to conduct a Payroll Compliance Review/Audit of Defendant Consulate's financial/payroll records concerning its obligations to the Fund and to pay the cost of the Audit; (4) pay liquidated damages, interest, Audit costs and all costs of litigation, including attorney's fees expended by the Fund to collect any amounts due as a consequence of Defendant Consulate's failure to comply with its contractual and statutory obligations; and, (5) abide by the terms of the Policy for the Collection of Delinquent Fringe Benefit Contributions for the Fund ("Collection Policy"). (Am. Compl. ¶ 18.)[2]  To that end, Defendant Consulate was required to provide access to financial records deemed necessary for the Fund to determine if said Defendant properly complied with its contribution obligations. (Am. Compl. ¶ 19.)

### 2. Audit

A Payroll Compliance Review/Audit performed for the Fund for the periods

---

[2] Plaintiffs have not attached pertinent portions of these relevant documents to their Amended Complaint or Response to the instant Motion. In its Answer to Plaintiffs' Amended Complaint, Defendant Consulate properly points out "The allegations in Complaint Paragraph No. 18 purport to recite the contents of written documents – the CBAs and Trust Agreements – that speak for themselves and are the best evidence of their terms." (Def. Consulate Answer ¶ 18.)

of January 1, 2016 through December 31, 2016 and January 1, 2017 through December 31, 2017, revealed benefit contribution deficiencies. (Am. Compl. ¶ 21.)[3] Payment of the deficient contributions and penalties assessed against Defendant Consulate was demanded by the Fund; however, Defendant Consulate rejected the demand. (Am. Compl. ¶ 23.)[4]

### 3. Sterling's Purchase of Consulate

Plaintiffs allege (upon information and belief) that Defendant Sterling assumed, through purchase, transfer, sale or lease, Defendant Consulate's assets, operations, contracts, customers, employees, equipment, and liabilities. (Am. Compl. ¶¶ 13–14, 31.)[5] "Upon information and belief[,]" Plaintiffs claim Defendant Sterling hired all or portions of Defendant Consulate's work force, retained some or all the patients, customers and accounts of Defendant Consulate, and retained

---

[3] Again, although Plaintiffs directed the Audit and have knowledge of when it occurred, they do not indicate same in their Amended Complaint or Response to the instant Motion. Defendant Consulate has responded to Plaintiffs' allegation regarding the Audit as follows: "Defendant lacks knowledge or information specific to form a belief as to the allegations in Complaint Paragraph No. 21, except to admit that *by letter dated December 22, 2020*, 'Consulate Health Care (Frostburg Village) . . . ' was notified that a preliminary audit for 2016 and 2017 was conducted and deficiencies were alleged." (Def. Consulate Answer ¶ 21) (emphasis added).

[4] Defendant Consulate further Answers "Upon information and belief, Defendant FFO, LLC admits that *commencing on or about September 19, 2022*, the Fund sent various communications to 'Consulate Health Care (Frostburg Village) . . .' demanding alleged delinquent contributions and penalties. Defendant denies the remaining allegations set forth in Complaint Paragraph No. 23 and specifically denies that Plaintiffs are entitled to any relief whatsoever." (Def. Consulate Answer ¶ 23) (emphasis added).

[5] Defendant Consulate responds "Defendant FFO, LLC admits that *certain of its assets* were sold to Frostburg SNF *as of September 29, 2017*." (Def. Consulate Answer ¶ 31) (emphasis added).

5

Defendant Consulate's service agreements and/or warranties with vendors. (Am. Compl. ¶¶ 32–34.) Upon further "information and belief[,]" Plaintiffs aver that at the time of the asset sale, Defendant Sterling was aware, or should have been aware, that Defendant Consulate was delinquent in its benefit contributions to the Funds and of the demand by Plaintiffs to Consulate for payment of the delinquent benefit contributions revealed in the Audit. (Am. Compl. ¶¶ 35–36.) Plaintiffs say this is so because it is "common" for the purchasing party to conduct due diligence prior to purchasing the assets of another company. (Am. Compl. ¶ 37.) Due diligence would include speaking with the selling company's officers, executives and/or management employees, reviewing the books, records, contracts, financial statements, and financial and contractual obligations of the company to be sold or transferred prior to any proposed asset sale or transfer. (Am. Compl. ¶ 37.) To that end, Plaintiffs claim proper due diligence by Defendant Sterling would have included:

- requests for controlled group information regarding any ERISA Title IV Plans within the controlled group of Defendant Consulate, which might not be part of the transaction with Defendant Sterling, and should have included information requests concerning other Plans from which Defendant Consulate may have previously withdrawn;

- inquiries into the existence of any collective bargaining agreement and any potential outstanding financial obligations, delinquencies or liabilities including, but not limited to, any potential outstanding financial obligations, delinquencies or liabilities related to Defendant Consulate's CBA and participation in Funds;

- review of company documents, including but not limited, controlled group information, that would have generated follow-up questions and discussions regarding benefit plan contributions and to obtain information not readily available from the document review;

6

- requests for: (i) Fund Trust Document, Collection Policy, including but not limited to, all amendments and restatements thereto; (ii) communications from the Funds' Third Party Administrator and governmental communications, including but not limited to, Annual Reports, Determination Letters, Audits, Requests for Audit Materials; and, (iii) mandatory communications to Fund participants, including but not limited to, annual reports, Summary Plan Descriptions, Summary of Material Modifications, Benefit Plan Notices and Forms; and,

- inquiries regarding any potential outstanding financial obligations, delinquencies or liabilities related to Defendant Consulate's CBA and participation in the Fund for purposes of determining any potential withdrawal liability that may inure to Defendant Sterling which could affect the sale price of Defendant Consulate.

(Am. Compl. ¶¶ 39–43.)

Based upon the due diligence Plaintiffs believe Defendant Sterling may have conducted or should have conducted, Plaintiffs again assert Sterling should have been aware of Consulate's liabilities prior to acquiring their assets. (Am. Compl. ¶ 44.)

### 4. Defendant Sterling: Post-Acquisition

Plaintiffs claim that as a result of the acquisition, Defendant Sterling maintained a continuity of the operations of Defendant Consulate and is therefore liable for all obligations owed by Consulate. (Am. Compl. ¶¶ 46, 48.) Plaintiffs made a demand to Defendant Sterling for the payment of the delinquent benefit contributions revealed in the Audit and Sterling rejected same. (Am. Compl. ¶ 45.) The within action ensued.

II.   **JURISDICTION**

This Court exercises jurisdiction over Plaintiffs' ERISA claim under 28 U.S.C. § 1331. The parties are also diverse,[6] thereby conferring jurisdiction upon this Court pursuant to 29 U.S.C. § 1132.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires the court to dismiss a Complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking dismissal of the Complaint assumes the burden of establishing it fails to state a claim. Lesher v. Zimmerman, 822 F. App'x 116, 119 (3d Cir. 2020).

When reviewing a motion to dismiss, courts must accept the Complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a Complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court may

---

[6] Plaintiffs' principal place of business is in New Jersey, while Defendant Consulate's is in Florida and Defendant Sterling's is in Maryland. (Am. Compl. ¶¶ 8, 11, 13.) The amount in controversy exceeds $75,000. (ECF 29-2 at 4); see also 28 U.S.C.S. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . Citizens of different States[.]").

not accept "legal conclusions" as true, or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" Id.; see also Malleus, 641 F.3d at 563.

In conducting its 12(b)(6) assessment, the court is restricted to consideration of "the allegations contained in the complaint, exhibits annexed to the complaint[,] and matters of public record." Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274, 279 (3d Cir. 2018) (alteration in original) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). However, when a Complaint references extrinsic documents, the court may consider them if they are "undisputedly authentic" and "the complainant's claims are based upon [those] documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); see also In re Asbestos Products Liability Litigation (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider document[s] integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (cleaned up). To that end,

> A document forms the basis of a claim if the document is integral to or explicitly relied upon in the complaint. The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. Considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.

Trs. of the Local 888 Health Fund v. Kissler & Co., Civ. No. 14-8097, 2015 U.S.

9

Dist. LEXIS 129273, at *4 (D.N.J. Sept. 25, 2015) (cleaned up).

## IV. ANALYSIS

Congress enacted ERISA to establish "uniform federal standards for not only pension plans, but also welfare plans." Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co., 967 F.3d 218, 225 (3d Cir. 2020). ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry affecting commerce." 29 U.S.C. § 1003(a). ERISA contains "expansive pre-emption provisions" aimed "to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Aetna Health, Inc. v. Davila, 542 U.S. 200, 208, (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).[7]

Defendant Sterling has filed the instant Motion, seeking complete dismissal of Plaintiffs' claims against it for failure to state a claim, or in the alternative, partial dismissal on the basis of the statute of limitations. This Court shall address the latter first.

### A. Statute of Limitations

It is well settled that:

> A motion to dismiss under Rule 12(b)(6) on statute of limitations grounds should be granted where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the complaint. If the bar is not apparent on the face of the complaint, then it may not afford the basis for dismissal.

---

[7] As pleaded in Plaintiffs' Amended Complaint, Section 301 of the LMRA simply gives federal courts the exclusive jurisdiction to hear "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).

10

Cement Masons' Union Local No. 592 Pension Fund v. Almand Bros. Concrete, Inc., Civil Action No. 14-cv-5413, 2015 U.S. Dist. LEXIS 73645, at *5 (D.N.J. June 8, 2015) (cleaned up).

"New Jersey's six-year statute of limitations applicable to contract actions applies also to claims under ERISA to recover delinquent pension contributions." Stier v. Satnick Dev. Corp., 974 F. Supp. 436, 439 (D.N.J. 1997); see also Cement Masons' Union, 2015 U.S. Dist. LEXIS 73645, at *5 (same). In this case, Plaintiffs' entire basis for liability is an alleged breach of Trust Agreements by Defendant Consulate that was discovered through an Audit, the damages from which Plaintiffs claim should now be charged against Defendant Sterling by reason of its purchase of Consulate's assets. However, Plaintiffs provide the court with neither the Agreements, the date(s) upon which the Audit was conducted, the date(s) upon which they discovered a deficiency with the Fund, nor any indication of when Sterling purchased the business[8] or the terms of the purchase.[9] Also absent from the

---

[8] Plaintiffs were advised of the approximate sale date on or before June 29, 2023, when Sterling sought permission from the court to file a motion to dismiss the original Complaint and Plaintiffs were instead granted leave to amend. (ECF No. 8 at 1 n.1; ECF No. 18.) Nevertheless, Plaintiffs did not include this information in their subsequently filed Amended Complaint.

[9] For instance, in Paragraph 22 of Plaintiffs' Amended Complaint, Plaintiffs allege: "Defendant Consulate has failed to make benefit contributions including, but not limited to, the amounts set forth in the Audit and due under the Labor Contract, Trust Agreements or Plan Documents of the Plaintiff Fund in violation of 29 U.S.C. § 1145 for a period not barred by an applicable statute of limitations or similar bar." (Am. Compl. ¶ 33.) Notwithstanding the impropriety of Plaintiffs' conclusion of law regarding the statute of limitations, they fail to attach the Labor Contract, Trust Agreement, Plan Documents, or Audit to their Amended Complaint. Without same, this Court is unable to assess the timeliness or propriety of Plaintiffs' claims.

Amended Complaint, are the dates upon which Plaintiffs notified each defendant of the Audit results and the dates upon which they sent demand letters, even though it was Plaintiffs who initiated the Audit and sent the letters.[10]  Despite two opportunities to do so, Plaintiffs repeatedly fail to provide the court with copies of these items or pertinent information regarding same.  Without any allegation by Plaintiffs regarding the date(s) and circumstances of the Audit or the approximate date upon which the asset sale occurred, it is impossible to assess whether Plaintiffs' claims fall within the applicable statute of limitations and are properly before the court.  See Hearbest, Inc. v. Adecco USA, 13cv1026, 2013 U.S. Dist. LEXIS 127552, at *5 (D.N.J. Sept. 6, 2013) (reiterating that in order to "survive a Motion to Dismiss[,]" a Complaint must allege "adequate facts to establish 'how, when, and where[.]'") (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 212 (3d Cir. 2009)).

In view of the foregoing, Defendant Sterling's Motion to Dismiss any demand

---

[10]  This Court notes Defendant Sterling has attached a copy of the demand letter they received to the instant Motion as Exhibit 1.  (ECF No. 29-2 at 4.)  Said letter is dated September 14, 2022 and references the Audit performed for the years 2016 and 2017.  Because the document is integral to the claims set forth in Plaintiffs' Amended Complaint, it may be considered for purposes of the instant motion without having to convert same to a motion for summary judgment.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); Turkmenler v. Almatis, Inc., Civil Action No. 11-1298, 2012 U.S. Dist. LEXIS 44027, at *8 (W.D. Pa. March 28, 2012) ("With its Motion for Partial Dismissal, Defendant attached the written Employment Agreement . . . Although Plaintiff failed to include the Employment Agreement in his Complaint, this Court may consider the Employment Agreement in conjunction with Plaintiff's allegation for breach of contract because Plaintiff's claims are based on the Employment Agreement.").

for delinquent contributions that occurred prior to May 16, 2017 (6 years prior to the date upon which Plaintiffs initiated this action) shall be granted.

### B. Successor Liability

Neither side in this case disputes the fact that the transaction between Consulate and Sterling was an asset sale. Notwithstanding Plaintiffs' failure to provide a date (or even approximate date) of this sale in its Amended Complaint (Am. Compl. ¶ 14), Defendant Sterling contests the sufficiency of Plaintiffs' pleadings regarding Sterling's liability under the purchase. To assess this issue,

> The Third Circuit has set forth a two-part test for whether an asset purchaser could be held liable on a theory of successor liability:
>
>> [A] purchaser of assets may be liable for a seller's delinquent ERISA fund contributions to vindicate important federal statutory policy where [1] the buyer had notice of the liability prior to the sale and [2] there exists sufficient evidence of continuity of operations between the buyer and seller.
>
> Einhorn, 632 F.3d at 99 (adopting Seventh Circuit's rule in Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323 (7th Cir.1990)). "The inquiry should be effectuated on a case by case basis balancing the equities presently before the court." Id.

RP Baking LLC v. Bakery Drivers & Salesmen Local 194 & Indus. Pension Fund, Civil Action No.: 10-3819, 2012 U.S. Dist. LEXIS 44875, at *8 (D.N.J. March 30, 2012).

#### 1. Notice

Plaintiffs herein conclusively state that "at the time of the asset sale or transfer[,] Defendant Sterling was aware, or should have been aware, of the demand by Plaintiffs to Defendant Consulate for payment of the delinquent benefit

13

contributions ultimately revealed in the audit." (Am. Compl. ¶ 20.) They base this assertion on their belief that Sterling performed—or should have performed—due diligence and therefore learned of the alleged delinquency prior to consummating the sale with Consulate. Plaintiffs' personal belief regarding what Sterling "should" have done but failed to before the sale, is of no relevance. Instead, the inquiry is simply whether or not Sterling had notice of the liability prior to the sale. To that end, "[t]he notice requirement in such context 'centers on whether the buyer knows about the debts, not whether the buyer knows that the funds intend to seek recovery from it.'" Teamsters Local 469 Pension Fund v. J.H. Reid Gen. Contrs., Civ. No. 15-06185, 2020 U.S. Dist. LEXIS 192893, at *18 (D.N.J. Oct. 16, 2020). Plaintiffs do not plausibly plead same in their Amended Complaint.

To the extent Plaintiffs rely upon an article attached to their Response to the instant Motion,[11] this document was not directly referenced in Plaintiffs' Amended Complaint, nor was it attached thereto. Although the document appears to be taken from a website, Plaintiffs provide no indication as to the source, the author's qualifications to opine on such issues, or in what context it was written. As such, this Court will not consider the article in assessing the instant Motion. See Buchanan v. Ingram Content Grp., Civil Action No. 20-cv-2421, 2022 U.S. Dist. LEXIS 102186, at *7 (D.N.J. June 8, 2022) (rejecting a plaintiff's request to attach documents to her 12(b)(6) opposition brief where she provided "no legal authority or

---

[11] Ma'Cheries Harding, Asset Purchase Agreement Checklist: Due Diligence for Mergers & Acquisition, Sept. 19, 2021.

14

explanation as to how the Court could legally consider the exhibits and miscellaneous information provided with her motion."); Stapperfenne v. Nova Healthcare Adm'rs, Inc., Civil No. 05-4883, 2006 U.S. Dist. LEXIS 20711, at *8 (D.N.J. April 17, 2006) (declining to consider documents submitted by a plaintiff in opposition to a defendant's motion to dismiss pursuant to Rule 12(b)(6) because they were not "directly incorporated in or attached to the Complaint or Amended Complaint, nor are they public records.").

Putting aside the article submitted by Plaintiffs, they provide this Court with no legal authority to support their contention that performance of due diligence under the circumstances involved herein, was incumbent upon Defendant Sterling. Referring to "industry standards, common practices and common sense" (ECF No. 38 at 5), Plaintiffs cite to no relevant case law other than that which sets forth the customary 12(b)(6) pleading standards (ECF No. 38 at 5-18). Instead, they conclusively argue that reliance on their own belief that Sterling performed due diligence is "reasonable" (Am. Compl. ¶¶ 40-44) because doing so is "common" (Am. Compl. ¶ 37) and "proper" (Am. Compl. ¶¶ 38-39). This is simply not sufficient to plausibly establish notice.

## 2. Continuity of Operations

Plaintiffs fare no better in adequately pleading a "continuity of operations between the buyer and seller." Einhorn v. M.L. Ruberton Constr. Co., 632 F.3d 89, 99 (3d Cir. 2011). As Sterling accurately points out, the allegations regarding continuity of operations as contained in Plaintiffs' Amended Complaint constitute

nothing more than pure speculation.  (Am. Compl. ¶¶ 31-34.)  This Court construes these allegations as boilerplate recitations of the factors utilized to assess a "continuity of operations" between the buyer and seller.  See Einhorn, 632 F.3d at 99 ("Under the substantial continuity test courts look to, inter alia, the following factors: continuity of the workforce, management, equipment and location; completion of work orders begun by the predecessor; and constancy of customers."); see also Trs. of the B.A.C. Local 4 Pension Fund v. Demza Masonry, LLC, Civil Action No. 18-17302, 2021 U.S. Dist. LEXIS 18714, at *13 (D.N.J. Jan. 31, 2021) (same).  Adding the language "upon information and belief" before each of these factors does not make them so.

Although Plaintiffs argue the averments contained in their Amended Complaint permit the court to infer the plausibility of their claims, a claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see also Advanced Oral Techs., L.L.C. v. Nutrex Research, Inc., Civ. No. 10-5303, 2011 U.S. Dist. LEXIS 28625, at *10 n.6 (D.N.J. March 21, 2011) ("[M]any of Plaintiff's new paragraphs contain unsubstantiated charges made upon 'information and belief.' Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little hope of salvaging an otherwise defective complaint.").

To that end,

16

> Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief." Id. (quoting FED. R. CIV. P. 8(a)(2)).

Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co., Civil Action No. 21-1703, 2022 U.S. Dist. LEXIS 105297, at *3–4 (D.N.J. June 13, 2022); see also NL Indus. v. Old Bridge Twp., Civil Action No. 13-3493, 2014 U.S. Dist. LEXIS 90317, at *21 (D.N.J. June 30, 2014) ("Determining plausibility is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'") (quoting Iqbal, 556 U.S. at 679).

Further—and as referenced above—in order for a Complaint to proceed, it must allege "adequate facts to establish 'how, when, and where[.]'" Hearbest, 2013 U.S. Dist. LEXIS 127552, at *5 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 212 (3d Cir. 2009)); see also Essex Ins. Co. v. Miles, CIVIL ACTION NO. 10-3598, 2010 U.S. Dist. LEXIS 128888, at *7–8 (E.D. Pa. Dec. 3, 2010) ("[In Partners Coffee and Shenango,] [t]he plaintiff alleged, 'upon information and belief,' that the defendant failed to observe corporate formalities, misappropriated corporate assets for personal use, and treated the corporation as a 'shell.' Because these allegations were legal conclusions devoid of 'any facts regarding the time, place or manner of actual conduct,' the District Court dismissed the complaint. Like the pleadings in Partners . . . , Essex's complaint is merely a recitation of the legal elements[.] Consequently, the complaint fails under the pleading standard of Rule 8 as

17

interpreted by the Supreme Court in Twombly and Iqbal. It simply does not state sufficient facts to make out a plausible claim for relief.") (cleaned up).

In this case, the level of speculation attributed to the continuity of operations averments contained in Plaintiffs' Amended Complaint far surpasses the level of plausibility required to survive a 12(b)(6) motion.

### C. Result of Deficiencies

Plaintiffs' Amended Complaint is devoid of the dates necessary for this Court to determine whether their claims are timely, even though the majority of those dates are, or should be, known to Plaintiffs. See Lemoine v. Empire Blue Cross Blue Shield, Civil Action No. 16-6786, 2018 U.S. Dist. LEXIS 62535, at *16 (D.N.J. April 12, 2018) (dismissing a plaintiff's ERISA claim because although she "adequately sets forth the date of her injuries and the general dates of hospitalization and rehabilitation . . . [Plaintiff fails to provide plausible factual allegations] as to which actual portions of the plans were violated, when they were violated, or how they were violated[.]").[12]

Plaintiffs' Amended Complaint is similarly deficient on both the notice and continuity of operations requirements. Excluding all recitations of legal elements, conclusions of law, and unreasonable speculation contained therein, Plaintiffs have

---

[12] To the extent Plaintiffs seek discovery, "although 'Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" Synthes, Inc. v. Emerge Med., Inc., Civil Action No. 11-1566, 2012 U.S. Dist. LEXIS 134886, at *15 (E.D. Pa. Sept. 19, 2012) (quoting Iqbal at 678-79).

not pleaded plausible claims against Defendant Sterling. See <u>Napolitano v. Ragan & Ragan</u>, Civil Action No. 15-2732, 2017 U.S. Dist. LEXIS 131335, at *27 (D.N.J. Aug. 17, 2017) ("[P]laintiff . . . apparently rests on the . . . assumption that discovery will prove her allegations, to satisfy her burden. However, Plaintiff cannot speculate as to the merits of her claims by making unsupported allegations. As the Complaint stands, it does not appear that Plaintiff conducted an adequate pre-complaint investigation in order to properly plead her claims. While the Federal Rules permit allegations upon information and belief, such pleading does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to . . . make claims . . . without any factual basis or justification.") (cleaned up); <u>United States ex rel. Whatley v. Eastwick Coll</u>., Civ. No. 2:13-1226, 2015 U.S. Dist. LEXIS 95862, at *18–19 (D.N.J. July 23, 2015) (rejecting a plaintiff's allegations made "upon information and belief" because "[t]hese speculative, unsupported allegations fail to satisfy even the more lenient pleading standard under Federal Rule of Civil Procedure 8(a).").

Accordingly, Counts III and IV of Plaintiffs' Amended Complaint shall be dismissed.

### D. Amendment

As an alternative to dismissal with prejudice, Plaintiffs seek leave to file a Second Amended Complaint pursuant to Fed.R.Civ.P. 15(a)(2). (ECF No. 38 at 9.)

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." <u>Arthur v. Maersk, Inc</u>., 434 F.3d 196, 204 (3d Cir. 2006)

(citations omitted). Denial of leave to amend may be justified by "undue delay, bad faith, and futility." Id. (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Amendment "would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)) (additional citations omitted).

Notwithstanding Plaintiffs' prior opportunity to amend, this Court cannot conclude that further amendment would be futile. Much of the information needed to allege potentially plausible claims against Defendant Sterling is within Plaintiffs' possession and/or knowledge and could conceivably cure the defects identified above.

## V. CONCLUSION

For the foregoing reasons, Defendant Sterling's Motion to Dismiss is **GRANTED** and the claims against said Defendant are **DISMISSED without prejudice**. An accompanying Order shall issue.

Dated:  4/26/24  
Camden, New Jersey

/s/   Renée Marie Bumb  
Renée Marie Bumb, Chief  
United States District Judge